UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| CARRINGTON MORTGAGE SERVICES, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>TAPESTRY AT TOWN CENTER HOMEOWNERS ASSOCIATION; TERRA WEST COLLECTIONS GROUP LLC; SFR INVESTMENTS POOL 1, LLC; DOE INDIVIDUALS I-X, inclusive; and ROE CORPORATIONS I-X, inclusive,<br><br>    Defendants. | Case No. 2:17-cv-01047-RFB-PAL<br><br>**ORDER** |
| SFR INVESTMENTS POOL 1, LLC,<br><br>    Counter-Claimant/Cross-Claimant,<br>    v.<br><br>CARRINGTON MORTGAGE SERVICES, LLC; ESTHER MARIN, an individual,<br><br>    Counter-Defendant/Cross-Defendant. | |

**I.    INTRODUCTION**

Before the Court are Defendant/Counter-Claimant/Cross-Claimant SFR Investments Pool 1, LLC's ("SFR's") Renewed Motion for Summary Judgment (ECF No. 50), Plaintiff/Counter-Defendant Carrington Mortgage Services, LLC's ("Carrington's") Renewed Motion for Summary Judgment (ECF No. 51), and Defendant Tapestry at Town Center Homeowners Association's ("the HOA's") Counter Motion for Summary Judgment (ECF No. 56).

In the complaint filed May 9, 2017, Carrington seeks quiet title/declaratory judgment and injunctive relief based on allegations of wrongful foreclosure violating the federal constitution and Nevada statutes. ECF No. 1. For the reasons stated below, the Court grants in part and denies in part all three motions.

## II. FACTUAL BACKGROUND

### a. Undisputed Facts

The Court finds that the following facts are undisputed.

On or about February 27, 2008, Esther Marin and Rosa Linares ("the borrowers") purchased property located at 9141 Captivating Avenue, Las Vegas, Nevada 89149 ("the Property"). The borrowers financed ownership of the property by way of a loan in the amount of $162,649.00 evidenced by a note and secured by a deed of trust (the senior deed of trust) recorded February 29, 2008.

The borrowers failed to pay the HOA all amounts due to it. On May 5, 2010, the HOA, through its agent Assessment Management Services ("AMS"), recorded a notice of claim of delinquent assessment lien. Per the notice, the amount due to the HOA was $1,169.04, which includes assessments, late fees, special assessments, fines, collection fees, trustee fees, and interest.

On April 23, 2012, the HOA, through its agent AMS, recorded a notice of default and election to sell under homeowners association lien. The notice states the amount due to the HOA was $3,130.42, which may include assessments, late fees, special assessments, collection fees, trustee fees, and interest.

On February 26, 2014, the HOA, through its agent AMS, recorded a notice of foreclosure sale. The notice states the amount due to the HOA was $7,118.63, which may include assessments, late fees, special assessments, collection fees, and interest.

The HOA foreclosed on the property on or about March 21, 2014. A foreclosure deed in favor of SFR was recorded April 2, 2014.

### b. Disputed Facts

The parties dispute whether the Property is insured by the Federal Housing Administration

("FHA"), whether the deed of trust was properly assigned to Carrington, and whether tender was offered and/or rejected.

Regarding tender, Carrington alleges that Miles, Bauer, Bergstrom and Winters on behalf of Bank of America sent the HOA and its foreclosure agent AMS a letter dated May 23, 2012 requesting sufficient information to identify nine months' of common assessments and offering to pay that sum. Carrington alleges that the HOA and AMS refused to identify the super-priority amount, but provided a ledger indicating the monthly assessment amount was $66.00. Nine months of monthly assessments totals $594, and Bank of America allegedly tendered $988.00 to the HOA to satisfy the super-priority lien—nearly $400.00 more than the actual super-priority amount. AMS allegedly rejected the payment.

### III. PROCEDURAL BACKGROUND

Carrington filed its Complaint on April 13, 2017. ECF No. 1. The HOA filed an answer on May 24, 2017. ECF No. 11. SFR filed on answer on June 26, 2017, with a cross-claim against Esther Marin and a counter-claim against Carrington. ECF No. 22.

On June 26, 2017, the Court entered a scheduling order. ECF No. 20.

Carrington filed an answer to the counter-claim on June 30, 2017. ECF No. 24. Terra West Collections Group LLC filed an answer on July 10, 2017. ECF No. 25.

Discovery closed on November 20, 2017. ECF No. 20. On December 8, 2017, the Clerk of Court entered default as to Esther Marin. ECF No. 36.

On December 18, 2017, Carrington filed a Motion for Summary Judgment. ECF No. 38. On December 20, 2017, SFR filed a Motion for Summary Judgment. ECF No. 39.

On July 12, 2018, the Court denied all pending motions without prejudice and issued a stay in the case pending the Nevada Supreme Court's decision on a certified question of law regarding NRS 116's notice requirement in Bank of N.Y. Mellon v. Star Hill Homeowners Ass'n, Case No. 2:16-cv-02561-RFB-PAL. ECF No. 49. The Nevada Supreme Court published an answer to the certified question on August 2, 2018. SFR Investments Pool 1, LLC v. Bank of New York Mellon, 422 P.3d 1248 (Nev. 2018).

On August 23, 2018, SFR and Carrington each filed the instant Renewed Motions for Summary Judgment. ECF Nos. 50, 51. On September 14, 2018, the HOA filed the instant Counter Motion for Summary Judgment. ECF No. 56.

The Court now lifts the stay in this case and considers all pending motions.

### IV. LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When considering the propriety of summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. Gonzalez v. City of Anaheim, 747 F.3d 789, 793 (9th Cir. 2014). If the movant has carried its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (alteration in original) (internal quotation marks omitted).

### V. DISCUSSION

#### a. SFR's Motion for Summary Judgment

SFR seeks summary judgment as to Carrington's claims against it and as to its counter-claims against Carrington. SFR additionally seeks summary judgment on its cross-claim against Marin, who has not participated in this lawsuit thus far and against whom a clerk's default has been entered.

##### i. Statute of Limitations

SFR argues that Carrington's complaint is time-barred pursuant to a three-year statute of limitations. For statute of limitations calculations, time is computed from the day the cause of action accrued. Clark v. Robison, 944 P.2d 788, 789 (Nev. 1997). The foreclosure sale occurred

on March 21, 2014.  The Court finds that all of Carrington's claims began to run on the date of the foreclosure sale as these claims all stem from issues or disputes regarding the sale and its effect. The complaint was filed on April 13, 2017, over three years later.

Carrington argues that SFR waived the statute of limitations defense by failing to raise the defense in its answer.  While the Court agrees that a statute of limitations defense is waivable pursuant to Rule 8 of the Federal Rules of Civil Procedure, SFR plainly raised the issue in its Answer.  ECF No. 22 at 8 ("The Bank's causes of action are barred in whole or in part by the applicable statutes of limitations . . . .").

The Court finds that, to the extent Carrington's pleading relates to any alleged violation of a right protected by statute, Carrington's claims carry a three-year statute of limitations pursuant to NRS 11.190(3)(a), which applies to actions upon a liability created by statute.  Therefore, Carrington's second cause of action for breach of NRS 116.1113 is entirely foreclosed, and its remaining causes of action for quiet title/declaratory relief, wrongful foreclosure, and injunctive relief are foreclosed only to the extent violations of NRS 116.1113 are alleged.  However, to the extent Carrington seeks relief based on alleged unconstitutionality or on equitable grounds, Carrington's claims fall within the four-year catch-all provision at NRS 11.220 and are therefore timely.

The Court finds Carrington is not entitled to the five-year statute of limitations for certain quiet title actions pursuant to NRS 11.070 and 11.080.  The statute of limitations provided by these code sections only apply when the plaintiff actually "was seized or possessed of the premises." Nev. Rev. Stat. §§ 11.070, 11.080; see also Saticoy Bay LLC Series 2021 Gray Eagle Way v. JPMorgan .Chase Bank, N.A., 388 P.3d 226, 232 (Nev. 2017) (NRS 11.080); Bissell v. Coll. Dev. Co., 469 P.2d 705, 707 (Nev. 1970) (NRS 11.070).  NRS 11.070 and 11.080 do not apply to claims by parties that held only a lien interest, not title.

The Court also does not find that Carrington's declaratory relief claim is not bound by a statute of limitations.  But "[a] claim for declaratory relief is subject to a statute of limitations generally applicable to civil claims." Zuill v. Shanahan, 80 F.3d 1366, 1369–70 (9th Cir. 1996).  Facklam, relied upon by Carrington, holds only that a statute of limitations does not

operate to bar a nonjudicial foreclosure, as such a foreclosure is neither a civil nor a criminal judicial proceeding; Facklam does not hold that a statute of limitations cannot bar a judicial action challenging a nonjudicial foreclosure. See Facklam v. HSBC Bank USA for Deutsche ALT-A Sec. Mortg. Loan Tr., 401 P.3d 1068, 1070–71 (Nev. 2017) (en banc). And while Nevada law recognizes that "[t]he statute of limitations applies differently depending on the type of relief sought" and that "claimants retain the right to prevent future violations of their constitutional rights [through prospective relief]," City of Fernley v. State, Dep't of Tax, 366 P.3d 699, 706 (Nev. 2016), the relief Carrington seeks is retrospective in nature. Carrington argues that the relief it seeks is prospective: whether Carrington can proceed to judicially foreclose on the senior deed of trust. But to so find, the Court would first need to award retrospective relief by finding that the foreclosure sale did not extinguish the deed of trust or that the foreclosure sale was void, meaning a deed of trust existed on which the judicial foreclosure claim could proceed.

### ii. Facial Unconstitutionality

SFR argues that Carrington's claim that NRS Chapter 116 facially violates its constitutional due process rights is foreclosed by Nevada Supreme Court case law. The Court agrees.

In Bourne Valley Court Trust v. Wells Fargo Bank, NA, the Ninth Circuit held that the opt-in notice scheme outlined in NRS Chapter 116 did not meet the minimum requirements of constitutional due process and that NRS 116.31168 did not incorporate the notice requirements of NRS 107.090. 832 F.3d 1154, 1158–59 (9th Cir. 2016), cert. denied, 137 S. Ct. 2296 (2017). This holding was based upon the Ninth Circuit's interpretation of Nevada's statutory scheme under NRS Chapter 116 as an "opt-in" notice statutory scheme. Importantly, the Nevada Supreme Court had not yet had a direct opportunity to construe the applicable statutes. The Nevada Supreme Court thereafter held that NRS 116.31168 incorporated the notice requirements of NRS 107.090. SFR Investments Pool 1, LLC v. Bank of New York Mellon, 422 P.3d 1248, 1252 (Nev. 2018). Thus, the Nevada Supreme Court found notice to be mandatory to interest holders like Carrington. Id. As the Nevada Supreme Court had not previously had an opportunity to explicitly construe the respective state statutes in terms of their notice requirements and as the Nevada Supreme Court is

the final arbiter of the construction of Nevada statutes, this Court must follow the Nevada Supreme Court's interpretation of Nevada statutes in this case. California Teachers Ass'n v. State Bd. of Educ., 271 F.3d 1141, 1146 (9th Cir. 2001) (explaining that "it is solely within the province of the state courts to authoritatively construe state legislation"); Owen By & Through Owen v. United States, 713 F.2d 1461, 1464 (9th Cir. 1983) (noting that Ninth Circuit's interpretation of state law is only binding to the extent there is no subsequent indication from the state court that the interpretation was incorrect). This Court has previously found consistent with the Nevada Supreme Court's interpretation of Nevada law that NRS 107.090 as incorporated by the Nevada HOA lien statute satisfies due process requirements. JPMorgan Chase Bank, N.A. v. SFR Investments Pool 1, LLC, 200 F. Supp. 3d 1141, 1160–61 (D. Nev. 2016). The Court incorporates that prior reasoning by reference. Based upon the holding of the Nevada Supreme Court in SFR Investments Pool 1 and this Court's prior analysis, the Court finds that Nevada's statutory scheme in NRS Chapter 116 does not violate due process. Therefore, SFR is entitled to summary judgment on Carrington's claim as to the facial constitutionality of NRS Chapter 116.

### iii. As-Applied Constitutionality

SFR argues that Carrington lacks standing to make its due process challenge because it received actual notice of the HOA sale and therefore experienced no injury in fact. The Court interprets this to be an argument that Carrington was not in fact deprived of constitutionally-compliant notice and that any as-applied due process challenge must therefore fail.

The Court finds that the notice in this case did not deprive Carrington of due process under the federal constitution. Before a state takes any action that will adversely "affect an interest in life, liberty, or property . . . , a State must provide 'notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" Mennonite Bd. of Missions v. Adams, 462 U.S. 791, 795 (1983) (quoting Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950)). "The notice must be of such nature as reasonably to convey the required information, . . . and it must afford a reasonable time for those interested to make their appearance." Mullane, 339 U.S. at 315

///

(citations and quotations omitted). And "if with due regard for the practicalities and peculiarities of the case these conditions are reasonably met, the constitutional requirements are satisfied." Id.

The Court finds that Carrington's predecessor-in-interest received notice of the HOA's intent to sell the Property long before the HOA took any action to foreclose upon the its lien. The Notice of Default and Election to Sell Under Homeowners Association Lien was recorded on April 23, 2012 and the Notice of Sale was recorded on February 26, 2014, providing adequate notice before the March 21, 2014 auction. Carrington does not allege that its predecessor-in-interest was unaware of these notices; indeed, Carrington alleges that its predecessor *was* aware and tendered on August 30, 2012. Because Carrington's predecessor had notice for several months of the intended sale of the Property, it had sufficient opportunity to invoke whatever means available, including court intervention or engaging the foreclosing entities, to prevent or halt the sale. It did not. "[I]t is well established that due process is not offended by requiring a person with actual, timely knowledge of an event that may affect a right to exercise due diligence and take necessary steps to preserve that right." In re Medaglia, 52 F.3d 451, 455 (2d Cir. 1995).

Moreover, the Court finds that the operation of NRS 116.3116 in terms of the ordering of the priority of liens and the extinguishment of junior liens was and is apparent under Nevada law. The language of the statute itself clearly creates a super-priority lien for nine months of outstanding HOA assessments. See NRS 116.3116. And the fact that the junior liens will be extinguished upon the foreclosure of the super-priority lien is apparent from Nevada's following of the Restatements, particularly the Restatement Third of Property. See SFR Investments Pool 1 v. U.S. Bank, 334 P.3d 408, 412 (Nev. 2014) (citing to the Restatements for the principle that "[a] valid foreclosure of a mortgage terminates all interests in the foreclosed real estate that are junior to the mortgage being foreclosed").

Carrington's as-applied due process argument must consequently fail as a matter of law, entitling SFR to summary judgment for this basis of Carrington's claims.

### iv. FHA Insurance Program

SFR argues that FHA insurance does not affect the propriety of the foreclosure sale, as the Supremacy Clause does not apply to preempt NRS 116.3116. The Court agrees and finds that NRS

116.3116 is not preempted by the Department of Housing and Urban Development's ("HUD's") insurance program under any of the preemption doctrines.[1]

First, Carrington has not identified, and the Court has not found, any authority expressly preempting the operation of state law in the context of HOA foreclosures on HUD-insured mortgages. Thus, express preemption does not apply.

Second, it is clear that field preemption does not apply either, as property foreclosure is not an area where Congress has demonstrated its intent to "occupy the field" of regulation. On the contrary, foreclosure of real property has traditionally been an area left to the states. See BFP v. Resolution Trust Corp., 511 U.S. 531, 544, (1994) ("It is beyond question that an essential state interest is at issue here: We have said that 'the general welfare of society is involved in the security of the titles to real estate' and the power to ensure that security 'inheres in the very nature of [state] government' ") (alteration in original) (quoting Am. Land Co. v. Zeiss, 219 U.S. 47, 60 (1911)); see also Rank v. Nimmo, 677 F.2d 692, 697 (9th Cir. 1982) ("mortgage foreclosure has traditionally been a matter for state courts and state law") (citation and internal quotation marks omitted); Butner v. United States, 440 U.S. 48, 55 (1979) ("Property interests are created and defined by state law.").

The only potential way in which N.R.S. 116.3116 could be preempted, therefore, is through conflict preemption. Carrington argues that enforcing N.R.S. 116.3116 to extinguish Carrington's deed of trust would conflict with the purposes of HUD's insurance program, through which it insures mortgages originated by private lenders for the purpose of making housing available to all citizens. Carrington contends that this program allows title to be conveyed to HUD after foreclosure on the deed of trust, thereby allowing HUD to replenish the funds used for the insurance program, and that enforcement of the HOA's superpriority lien through N.R.S. 116.3116 would interfere with this structure.

The purpose and structure of HUD's mortgage insurance program was set forth in detail in Freedom Mortgage:

---

[1] The Court notes that the factual dispute as to whether the Property was in fact insured by the FHA is therefore immaterial and need not be resolved.

9

> As HUD's website and various publications explain, the single-family mortgage-insurance program provides mortgage insurance to protect lenders against the risk of default on mortgages to qualified buyers. The federal regulations governing the program are contained in the Code of Federal Regulations (CFR), Title 24. When a HUD-insured mortgage goes into default, the lender may make a claim for the remaining principal amount owed under the loan. Typically, the lender must assign the mortgage to HUD and certify that the mortgage is prior to all liens and encumbrances, or defects which may arise except such liens or other matters as may have been approved by the Commissioner. Alternatively, the lender may foreclose, acquire title, and make a claim for the deficiency. The insurance contract shall be terminated if [t]he property is bid in and acquired at a foreclosure sale by a party other than the mortgagee—which is to say, any party except the lender. In short, a lender has two primary ways to obtain benefits under the program: (1) assign the first-position mortgage interest to HUD before foreclosure or (2) initiate foreclosure and make a claim for the deficiency.

106 F.Supp.3d 1174, 1183–84 (D. Nev. 2015) (footnotes, citations, and internal quotation marks omitted) (alteration in original).

The Court concludes that conflict preemption does not apply in this case. Lenders are perfectly capable of complying with both HUD's program and N.R.S. 116.3116; in fact, HUD's regulations expressly *contemplate* situations in which a lender forfeits its security interest by failing to protect it against senior interests. As described in Freedom Mortgage, when a HUD-insured mortgage goes into default, a lender has two options: (1) assign the first-position mortgage interest to HUD before foreclosure and make a claim for the remaining principal amount, or (2) initiate foreclosure and make a claim for the deficiency. 106 F.Supp.3d at 1184; 24 C.F.R. §§ 203.350, 203.351, 203.401. If it fails to protect its interest, however, the lender loses any claim to benefits; under 24 C.F.R. § 203.315, HUD's contract of insurance is terminated where "[t]he property is bid in and acquired at foreclosure by a party other than the mortgagee." Therefore, the lender is in control of its compliance with both HUD's program and Nevada's foreclosure statutes. HUD only has an interest in the property insofar as the lender conveys title or forecloses and initiates a claim. HUD's property interest ceases once a third party buyer acquires the property at a foreclosure sale, and HUD's decision (by virtue of 24 C.F.R. § 203.315) to terminate its contract at that point demonstrates that such foreclosures do not serve as an obstacle to HUD's program. On the contrary, the only obstacle to HUD's objectives appears to be the lender's own inaction.

There can thus be no conflict preemption because compliance with both state and federal law is possible and Nevada's HOA lien statute does not serve as an obstacle to Congress's objectives in enacting the HUD insurance program. For these reasons, Carrington's Supremacy Clause challenge fails.

### v. Equity Jurisdiction

SFR argues that Carrington has no remedies available against SFR regarding the allegedly wrongful foreclosure sale because any wrongful foreclosure can be compensated with money damages. The Court disagrees and finds that it has "inherent equitable jurisdiction to settle title disputes." See Shadow Wood Homeowners Ass'n, Inc. v. New York Cmty. Bancorp, 366 P.3d 1105, 1110–1111 (Nev. 2016). The Court possesses the power to invalidate the foreclosure sale and/or to make declarations as to the present interests in the Property, or lack thereof, held by the Parties. Carrington may seek equitable relief.

### vi. Cross & Counter-Claim

SFR seeks summary judgment in its favor on its cross-claims against Marin and its counter-claim against Carrington. It requests declaratory relief that the foreclosure sale vested title in SFR, and that Carrington and Marin lack an interest in the Property. Carrington responds that SFR is not entitled to judgment because its predecessor-in-interest tendered the super-priority portion of the HOA's lien in advance of the sale, and the tender preserved Carrington's interest. As discussed in greater detail below, the Court finds that tender preserved Carrington's interest in this case. SFR is therefore not entitled to summary judgment on its cross- and counter-claim. For the same reason, the Court declines to expunge the lis pendens.

### b. Carrington's Motion for Summary Judgment

Carrington argues that NRS Chapter 116 is facially unconstitutional, that the sale violated due process as-applied, and that summary judgment is warranted under the Supremacy Clause. The Court incorporates by reference its reasoning above regarding these arguments and denies summary judgment to Carrington on these bases. The Court proceeds to address Carrington's remaining equity-based claims and SFR's response.

### i. Inadequate Sales Price

11

1    Carrington argues that, because the property had a fair market value of $136,000 as of the
2    date of foreclosure and SFR purchased the property for $12,000, the sales price was inadequate.
3    The Court finds that Carrington cannot succeed on its claim on the basis of alleged inadequate
4    sales price. NRS Chapter 116 does not contain any provisions requiring that an HOA foreclosure
5    sale be commercially reasonable, nor does it provide for parties to be able to set aside foreclosure
6    sales as being commercially unreasonable. Chapter 116 *does* require that "[e]very contract or duty
7    governed by this chapter imposes an obligation of good faith in its performance or
8    enforcement." NRS 116.1113. "Good faith" is defined in the Nevada Revised Statutes as meaning
9    "honesty in fact and the observance of reasonable commercial standards of fair dealing." NRS
10   104.1201(t). This definition only applies, however, to the extent that an action is governed by
11   another article of the Uniform Commercial Code ("UCC") as adopted in Nevada. NRS
12   104.1102. The Nevada Supreme Court has clearly held that HOA foreclosure sales are not
13   governed by the commercial reasonableness standard of the UCC as adopted in Nevada: "we hold
14   that [commercial reasonableness] has no applicability in the context of an HOA foreclosure
15   involving the sale of real property. As to the Restatement's 20-percent standard, we clarify that
16   Shadow Wood did not overturn this court's longstanding rule that inadequacy of price, however
17   gross, is not in itself a sufficient ground for setting aside a trustee's sale absent additional proof of
18   some element of fraud, unfairness, or oppression as accounts for and brings about the inadequacy
19   of price." Nationstar Mortg., LLC v. Saticoy Bay LLC Series 2227 Shadow Canyon, 405 P.3d 641,
20   642–43 (Nev. 2017) (internal citations omitted).

### ii. Tender

22   Carrington argues that the sale was defective because AMS refused to accept tender prior
23   to the foreclosure sale. SFR and the HOA each dispute whether tender of the super-priority amount
24   occurred. The Court finds that there can be no genuine dispute that Bank of America, N.A.,
25   Carrington's predecessor-in-interest, offered tender in this case.
26   The super-priority component of an HOA lien consists of "the last nine months of unpaid
27   HOA dues and maintenance and nuisance-abatement charges," while the sub-priority component
28   consists of "all other HOA fees and assessments." SFR Investments Pool 1 v. U.S. Bank, 334 P.3d

408, 411 (Nev. 2014). Pursuant to NRS 116.31162, a homeowner has at least 90 days following notice to pay the HOA's super-priority lien before an HOA may proceed to foreclosure sale. See NRS 116.31162; SFR Investments Pool 1, 334 P.3d at 411.

SFR disputes the sufficiency of Carrington's evidence supporting the alleged offer and/or rejection of tender. The delivery of tender is supported by an affidavit of Doug Miles, an employee of Miles, Bauer, Bergstrom and Winters, and a copy of the check. SFR argues that Miles does not claim to have personal knowledge of the alleged delivery of the check to AMS and alleged rejection and that therefore his affidavit is insufficient proof that the check was in fact delivered. But Miles's affidavit details and attaches business records that support the proffer and return of a $988 check. SFR produces no contrary evidence regarding receipt of this check and therefore introduces no more than metaphysical doubt as to its receipt.

The HOA argues that, because it is undisputed that $988.00 was *not* the super-priority amount, it is unclear whether the Bank of America was seeking to pay the super-priority lien. But the letter from Miles, Bauer, Bergstrom and Winters to AMS accompanying the check specifically explains its intent that the $988.00 amount cover the super-priority lien. Neither SFR nor HOA dispute that $988.00 was in fact more than the amount of the prior nine months of unpaid HOA dues and maintenance and nuisance-abatement charges.

The Court does not find upon the undisputed facts that the tender was insufficient because it was conditional. To the extent the tender was conditional, the Court finds that the conditions were ones on which Carrington's predecessor had a right to insist. The tender was presented with the following condition:

> This is a non-negotiable amount and any endorsement of said cashier's check on your part, whether express or implied, will be strictly construed as an unconditional acceptance on your part of the facts stated herein and express agreement that BANA's financial obligations towards the HOA in regards to the real property located at 9141 Captivating Avenue have now been "paid in full".

ECF No. 55, Exhibit 8-5. The Nevada Supreme Court has expressly held that substantively identical language constitutes a condition upon which a tenderer has the right to insist. Bank of

Am., N.A. v. SFR Investments Pool 1, LLC, 427 P.3d 113, 116–18 (Nev. 2018). The Court incorporates the Nevada Supreme Court's reasoning by reference and finds that the tender did not carry an improper condition.

### iii. Carrington's Interest

In its response to Carrington's motion, SFR contests the validity of the purported assignment of the deed of trust to Carrington. SFR suggests that serious misconduct or a recording error may have occurred which would impact the validity of documentation underlying the property transactions. SFR produces no evidence that such misconduct or error occurred in this case. Absent such evidence, the Court finds that the publicly recorded assignment of interest was valid. The Court therefore also finds that Carrington has standing to enforce the deed of trust and promissory note.

### iv. Bona Fide Purchaser

SFR argues in its response that regardless of whether tender discharged the debt to the HOA, SFR was a bona fide purchaser without knowledge of the tender. A bona fide purchaser is one who "takes the property 'for a valuable consideration and without notice of the prior equity, and without notice of facts which upon diligent inquiry would be indicated and from which notice would be imputed to him, if he failed to make such inquiry.'" Shadow Wood HOA v. N.Y. Cmty. Bancorp., 366 P.3d 1105, 1115 (Nev. 2016) (quoting Bailey v. Butner, 176 P.2d 226, 234 (Nev. 1947). Carrington argues that the publicly-recorded deed of trust put Saticoy Bay on inquiry notice that the lender could pay the HOA assessments, creating a duty to inquire. Whether diligent inquiry would have revealed tender and the resultant extinguishment of the HOA's super-priority lien is a question of fact for trial.

### b. HOA's Motion for Summary Judgment

The HOA's motion for summary judgment is based on arguments regarding facial constitutionality, tender, commercial reasonableness, and the Supremacy Clause. The Court incorporates by reference its reasoning above regarding these arguments. The Court therefore grants in part HOA's motion for summary judgment as to facial constitutionality, commercial reasonableness, and the Supremacy Clause and denies in part the motion as to tender.

## II. CONCLUSION

**IT IS ORDERED** that the stay in this case is LIFTED.

**IT IS FURTHER ORDERED** that SFR Investments Pool 1, LLC's Renewed Motion for Summary Judgment (ECF No. 50) is GRANTED in part and DENIED in part.

**IT IS FURTHER ORDERED** that Carrington Mortgage Services, LLC's Renewed Motion for Summary Judgment (ECF No. 51) is GRANTED in part and DENIED in part.

**IT IS FURTHER ORDERED** that Tapestry at Town Center Homeowners Association's Counter Motion for Summary Judgment (ECF No. 56) is GRANTED in part and DENIED in part.

**IT IS FURTHER ORDERED** that a status conference is set in this case for June 12, 2019 at 4:00 PM in LV Courtroom 7C.

DATED: March 31, 2019.

_____
RICHARD F. BOULWARE, II
UNITED STATES DISTRCIT JUDGE